IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Case No. 8:03CR33 |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | REPORT AND RECOMMENDATION |
| ROBERTO CAMACHO PATINO, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant Roberto Camacho Patino's Motion to Dismiss the Indictment against him on the grounds that his Sixth Amendment post-Indictment right to a speedy trial has been violated (#21).[1]  Patino is charged with possession of a firearm by a previously convicted felon, in violation of 18 U.S.C. § 922(g).  The Indictment (#1) was returned by a grand jury sitting in the District of Nebraska on January 23, 2003.  The defendant was arrested in the Central District of California on January 10, 2005 and appeared before United States Magistrate Judge Carolyn Turchin in California that same day.  He was transported, in custody, to the District of Nebraska and appeared February 23, 2005 for his initial appearance.  At the initial appearance, counsel was appointed and the defendant entered a plea of not guilty.  He was not remanded to custody, but was released to return to California per an Order of Conditions of Release (#20).

On March 7, 2005 the defendant filed a Motion to Dismiss for Lack of Speedy Trial (#21) and on May 17, 2005 the motion was heard.  During the hearing the court heard the

---

[1] At the conclusion of the hearing on the Motion to Dismiss, the defendant withdrew his pre-Indictment speedy trial claim (70:17-71:1).

testimony of special agent Ronald E. Meadows of the Bureau of Alcohol, Tobacco and Firearms (BATF), James A. Hall, an investigator with the office of the Federal Public Defender for the District of Nebraska (Mr. Hall), and Patino. The court received into evidence: the government's recommendation for prosecution packet (Ex. 1); a summary time log of events (Ex. 2); defendant's 2003 federal and California state tax returns dated April 15, 2004 listing his address as 129 S. Avenue 54 #6, Los Angeles, California 90042 (Ex. 3); a March 13, 2002 letter to the defendant from the California State Compensation Fund, listing his address as 355½ N. Avenue 52, Los Angeles, California 90042 (Ex. 4); and an October 23, 2003 Order of suspension from the Licensing Operations Division of the State of California listing his address as 355½ N. Ave. 52, Los Angeles, California 90042 (Ex. 6).

## FINDINGS OF FACT

Patino is charged in a one-count Indictment filed January 23, 2003, alleging that on November 15, 2002 he possessed two firearms after having been previously convicted October 2001 in the Superior Court of the State of California for grand theft.

At the May 17, 2005 hearing, the government alleged the indictment occurred after Roberto Camacho Patino's wife. Brenda Figueroa, purchased a firearm and after being contacted by the BATF as to the legality of her possession, sending a letter to the BATF advising them that she had sold the firearm to Patino (6:19-24). After further investigation, ATF agents determined that Patino, because of his prior felony conviction, could not legally possess the firearm (6:24-7:2).

On November 15, 2002 agents of ATF visited Patino in Schuyler, Nebraska and seized the firearm, but did not arrest him. During the visit, Patino informed the agent that

he was moving to California and gave agents the address and phone number of his parents in California where he could be reached (13:2-10; 21:20-24; 24:5-8; 46:13-47:3). Patino also filed a card at the Schuyler post office forwarding his mail to 355½ North Ave. 52, Los Angeles, California (51:4-12).

A summary of the activities conducted by the government between November 15, 2002 (the date Patino was interviewed in Schuyler) and January 10, 2005 (the date Patino was arrested in California, following a contact with Figueroa at 129 South Ave. 54, Apt.#6) (29:17-21), is contained in Exhibit 2, and Special Agent Meadows of BATF testified to the activities (18:10-16), the record contains no evidence to the contrary. I find the summary is accurate and reflects the post-indictment activities undertaken by the government in attempting to locate Patino:

    01/22/2003 — PATINO indicted by Federal Grand Jury.

    01/24/2003 — Arrest warrant received and PATINO entered into NCIC by ATF S/A Meadows.

    02/07/2003 — S/A Meadows spoke with PATINO's California Probation Officer, Annette Spence. Informed Ms. Spence of federal arrest warrant. Ms. Spence advised S/A Meadows that PATINO had a bench warrant in California issued for FTA in court in reference to leaving the State of California. (S/A Meadows had informed Ms. Spence in or about November 2002 that PATINO was in Nebraska).

    06/09/2003 — Queried NCIC, TECS, NLETS and State Driver's License Bureau's nationwide in reference to PATINO. Negative results.

    10/04/2004 — Left message for California Probation Officer Annette Spence to contact S/A Meadows in reference to location of PATINO. Left second message on 10/14/2004.

    10/14/2004 — S/A Meadows called phone number in Schuyler, NE that PATINO provided S/A Meadows on 11/15/02. Subject advised PATINO nor Brenda FIGUEROA (girlfriend) at number.

10/14/2004 — S/A Meadows contacted Schuyler, NE Police Chief Lenny Hiltner inquiring about PATINO and FIGUEROA. Chief Hiltner advised he would ask around about the two.

10/14/2004 — Checked with California Dept. Of Labor in reference to whether or not PATINO or FIGUEROA were employed in the State of California. Check revealed no information on PATINO and FIGUEROA'S last known employer was in 2003.

10/14/2004 — Checked with Nebraska Workforce Development. NWD advised no information on PATINO or FIGUEROA, only that FIGUEROA had wages in Nebraska several years ago.

10/14/2004 — Ran a National Comprehensive Report on PATINO. Listed five addresses in Los Angeles, California since 11/15/2002 and one in Schuyler, NE.

10/15/2004 — Schuyler, NE Police Chief Hiltner called and advised PATINO listed an address of 356½ N. Avenue 53, Los Angeles, CA on an apartment application a few years ago.

10/18/2004 — S/A Meadows informed ATF S/A Sonnendecker, Los Angeles, of arrest warrant for PATINO and possible addresses.

10/27/2004 — S/A Sonnendecker attempting to locate PATINO and conducting surveillance.

11/01/2004 — S/A Sonnendecker contacted post office and confirmed that PATINO and FIGUEROA received mail at 129 S. Ave. 54, Apt. #6, Los Angeles, CA. Negative results on surveillance.

11/03/2004 — S/A Sonnendecker observes FIGUEROA at address on S. Ave. 54, PATINO not observed.

11/04/2004 — Surveillance by S/A Sonnendecker, negative results.

11/08/2004 — Surveillance information forwarded to S/A Reyes to assist with surveillance.

11/24/2004 — S/A Sonnendecker informed S/A Meadows that PATINO still had not been located.

01/07/2005 — S/A Sonnendecker contacted FIGUEROA at 129 S. Avenue 54, Apt. #6. FIGUEROA says PATINO staying at 355½ N. Ave. 52.

> 01/07/2005 — After speaking with FIGUEROA, PATINO contacts S/A Sonnendecker.
>
> 01/10/2005 — PATINO lured to ATF office in Los Angeles with a ruse and arrested without incident.
>
> 01/10/2005 — PATINO removed from NCIC.

Patino asserts he has been denied his Sixth Amendment right to a speedy trial. In **Barker v. Wingo**, 407 U.S. 514 (1972), the Supreme Court established a four part test to determine whether an accused has been denied their constitutional right to a speedy trial.

First, inquiry must be made as to whether the delay was uncommonly long. In this case, the almost 24 months delay between indictment and arrest, is uncommonly long even without considering that Patino, during the November 15, 2002 meeting in Schuyler, gave Meadows an address and telephone number in California where he could be contacted. A delay of almost 24 months is clearly uncommonly long.

Second, inquiry must be made into who is more responsible for the delay, the government or Patino. In this case, the responsibility lies with the government. Patino was not informed whether or not he was going to be indicted and he did not attempt to hide his whereabouts; in fact, he told Meadows he was moving to California and how he could be contacted. It is also worthy of note that a review of the government's efforts to locate Patino (Ex. 2) reveals no activity between June 9, 2003 and October 4, 2004, almost 16 months. Both the BATF and the U.S. Attorney's office were negligent in the pursuit of Patino. While it is difficult to assign the degree of negligence which is attributable to each of them, such an assessment is not necessary as both are agents of the government. The

government's negligence in its attempts to locate Patino, who was living openly in California, cannot in any way be charged to Patino.

Third, an inquiry must be made as to whether Patino asserted his right to a speedy trial in due course. Patino timely filed this motion asserting the lack of a speedy trial within two weeks of his arraignment and there is no evidence Patino had knowledge of the Indictment prior to his arrest. Patino asserted his right to a speedy trial in due course at his earliest opportunity.

Fourth, inquiry must be made as to whether Patino suffered prejudice by the delay. In evaluating prejudice, the Supreme Court "has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." **Barker**, 407 U.S. at 532. While the physical evidence and witnesses in this case may still be available, the prejudice may be presumed if not persuasively rebutted. **Barker**, 407 U.S. at 534. As the court stated in **Doggett**:

> Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, **cf. Arizona v. Youngblood**, 488 U.S. 51, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988), and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; . . . .

*Doggett*, 505 U.S. at 657.

Based on the government's negligence which resulted in a delay of almost 24 months between indictment and arrest, the court finds Patino's Sixth Amendment rights have been violated. All of the factors of **Barker** weigh in Patino's favor and his motion to dismiss should be granted.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP** that Patino's motion to dismiss (Filing No. 21) be granted.

Pursuant to NECrimR 57.3, a party may object to this Report and Recommendation by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten (10) calendar days after being served with the recommendation. The statement of objection shall specify those portions of the recommendation to which the party objects and the basis of the objection. The objecting party shall file contemporaneously with the statement of objection a brief setting forth the party's arguments that the magistrate judge's recommendation should be *reviewed de novo* and a different disposition made.

**DATED June 3, 2005.**

                                        **BY THE COURT:**

                                        **s/ F.A. Gossett**
                                        **United States Magistrate Judge**