## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 8:03CR33 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM |
| vs. | ) | AND ORDER |
| | ) | |
| ROBERT CAMACHO PATINO, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court on the Report and Recommendation (Filing No. 36) issued by Magistrate Judge F.A. Gossett recommending that the Defendant's motion to dismiss for lack of speedy trial (Filing No. 21) be granted. The government filed a statement of objection to the Report and Recommendation (Filing No. 37) and a supporting brief (Filing No. 38) as allowed by 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a).

Camacho is charged in a one-count Indictment with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). Camacho filed a motion to dismiss this case on speedy trial grounds. The motion raised only the issue of post-indictment delay, while the supporting brief solely addressed the issue of pre-indictment delay. At the evidentiary hearing before Judge Gossett, the Defendant waived the issue of pre-indictment delay. Therefore, the Court is without the benefit of a written argument from the defense on the issue in this matter.

Following an evidentiary hearing on the motion, Judge Gossett issued a Report and Recommendation in which he determined: all four factors under *Barker v. Wingo*, 407 U.S. 514 (1972), are in the Defendant's favor; with respect to the fourth *Barker* factor, the prejudice is presumed rather than actual; and based on the government's negligence

resulting in a 24-month delay between indictment and arrest the Defendant's Sixth Amendment right to a speedy trial was violated.  On the basis of these determinations, Judge Gossett recommended that the Defendant's motion to dismiss be granted.

The government filed a statement of objections to the Magistrate Judge's Report and Recommendation, together with a supporting brief.  (Filing Nos. 37, 38.)

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(C) and NECrimR 57.3(a), the Court shall make a de novo determination of those portions of the report, findings, and recommendations to which the government has objected.  The Court may accept, reject, or modify, in whole or in part, the Magistrate Judge's findings or recommendations.  The Court may also receive further evidence or remand the matter to the Magistrate Judge with instructions.

## STATEMENT OF FACTS

The Magistrate Judge provided a detailed account of the events between the Defendant's indictment and arrest.  The Court has considered the transcript of the hearing conducted by the Magistrate Judge (Filing No. 35).  The Court also carefully viewed the evidence.  (Filing No. 33.)  Based on the Court's de novo review of the evidence, the Court modifies the Magistrate Judge's factual statement with the addition of the following:

- On March 9, 2005, Judge Gossett scheduled a hearing on the Defendant's motion to dismiss on April 5, 2005.  (Filing No. 23.)

- On March 30, 2005, the Defendant moved, albeit in an unopposed motion, to continue the hearing for thirty days because "[t]he parties need[ed] additional time to investigate relevant facts."  (Filing No. 24.)

2

- On March 31, 2005, Judge Gossett granted the Defendant's motion to continue (Filing No. 24), rescheduling the hearing to May 4, 2005. (Filing No. 25.)

- On April 1, 2005, the Defendant again moved to continue the hearing on the motion to dismiss for the reason that he would be out of town attending a seminar during the first week of May 2005. (Filing No. 26.)

- On April 6, 2005, Judge Gossett granted the second motion to continue (Filing No. 27), continuing the hearing to May 17, 2005. (Filing No. 27.)

Otherwise, the Court adopts the facts as stated by Judge Gossett.

## ANALYSIS

The government objects to the following conclusions in the Magistrate Judge's Report and Recommendation: the government was negligent in trying to locate Camacho during the two years in question; the Defendant suffered presumed prejudice from the almost two-year delay between indictment and arrest; and granting the Defendant's motion does not require a particularized showing of prejudice on Camacho's behalf. These issues are discussed below in the general framework of a discussion of the *Barker* factors, as the four factors overlap and are best analyzed together.

As Judge Gossett stated, the applicable test with respect to a potential violation of one's Sixth Amendment rights based on postindictment delay consists of the following four factors: whether the delay was uncommonly long; which party is more responsible for the delay; whether Camacho asserted his right to a speedy trial in due course; and whether a defendant suffered prejudice due to the delay. *Barker v. Wingo,* 407 U.S. 514, 530 (1972).

3

**Was the Delay Uncommonly Long**

As explained in *Doggett. United States,* 505 U.S. 647, 651-52 (1992), this first factor consists of two inquiries.  First, the defendant must show that the interval between indictment and arrest "crossed the threshold dividing ordinary from 'presumptively prejudicial' delay."  *Id.* at 652 (quoting *Barker,* 407 U.S. at 530-31).  If that showing is made, then the Court must consider "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim."  *Id.*  The two questions are related inasmuch as the presumption that the delay has caused prejudice intensifies with the length of the delay.  *Id.*  With respect to these interrelated prongs, the Eighth Circuit has stated that, while the length of the delay required for further inquiry varies with the facts of each case, "generally" a delay of one year is presumptively prejudicial.  *United States v. Brown,* 325 F.3d 1032, 1035 (8th Cir. 2003); *United States v. Sprouts,* 282 F.3d 1037, 1042 (8th Cir. 2002); *United States v. Walker,* 92 F.3d 714, 717 (8th Cir. 1996).  In Camacho's case, the Court determines that the extent to which the almost 24-month delay extended beyond the one-year threshold supports the existence of presumptive prejudice sufficient to trigger an inquiry of the remaining *Barker* factors.  *Walker,* 92 F.3d at 717. Accordingly, this factor weighs in Camacho's favor.

**Responsibility for the Delay**

Resolution of the second factor is difficult.  Camacho and his wife were interviewed in Nebraska on November 15, 2002, the day before they left to reside in California.  They did not hide this fact, and Camacho provided their California address and telephone number to law enforcement.  The government has not shown that its agents failed to

4

contact Camacho at this provided address or telephone number for any particular reason. *See United States v. Walker,* 92 F.3d at 718 (stating that often the government does not seek out fugitives at parents' addresses because it is thought that the fugitive would avoid that location). Rather, government agents effectively spun their wheels for almost 24 months in locating Camacho, who was located when he came to the ATF office. The government has stated in some detail the steps it took to locate Camacho. However, a common sense approach would have been to begin with Camacho's address and telephone number provided initially to law enforcement. The agent, Ronald E. Meadows, who transmitted information to an agent in the Los Angeles, California area could not recall specifically whether he had forwarded Camacho's address and telephone number to the Los Angeles agent. (Tr. 26-27.) Therefore, the delay might in part be due to a lack of communication. *United States v. Page,* 544 F.2d 982, 986 (8th Cir. 1976) (finding negligent delay attributable to lack of communication with respect to a detainer between a Mississippi Marshal's office and an Iowa United States Attorney's office). However, despite the steps taken the Court cannot ignore the government's failure to pursue sources obvious even to laypersons including, but not limited to: the sending of additional letters to the Defendant or his wife at their Schuyler, Nebraska or California addresses; and a call or visit to the Schuyler post office for a forwarding address, which existed. (*See, e.g.,* Tr. 25-26.) The Court therefore denies the government's objection, concluding that the delay was attributable to the government's negligence. However, the Court differs with Judge Gossett's conclusion insofar as the weight attributable to this factor. A finding of "mere negligence . . . should not be weighed heavily against the government." *Page,* 544 F.2d

at 986.  Therefore, the Court concludes that this factor weighs against the government, albeit not heavily.

### *Asserting Camacho's Right to a Speedy Trial*

Addressing this third factor, the Court has considered Judge Gossett's conclusion that Camacho's early filing of his motion to dismiss within two weeks after arraignment clearly meets the requirement that he asserted his right to a speedy trial in due course. The Court has also considered other facts relevant to Camacho's assertion of his speedy trial right.  For example, the Court notes Camacho's knowledge of potential charges against him from the time of his interview.  Even knowledge of *potential* charges weighs "heavily" against a defendant.  *Walker,* 92 F.3d at 718.  The Court has also considered, to some extent, the six-week delay of the hearing on the motion to dismiss. Although this particular delay occurred outside the time complained of, the Court finds the delay of the hearing relevant insofar as it relates to Judge Gossett's conclusion that the speed with which the motion to dismiss was filed alone satisfies this prong of the test in Camacho's favor.  The delay in the hearing on the motion was caused in the first instance by an unopposed request for a 30-day continuance.  The request was unsupported by any details, merely stating that both parties needed more time to investigate.  The second instance was at defense counsel's request so that he could attend a seminar.  There is no evidence as to whether the Defendant agreed to, or was even aware of, these delays. Nevertheless, this delay is noted at the Defendant's expense.  *See United States v. Titlbach,* 339 F.3d 692, 699 (8th Cir. 2003) (stating in the context of postindictment delay that the delay was attributable in part to the defendant because he and his codefendants

6

sought continuances requested by counsel and unknown to the defendant); *Stewart v. Nix,* 972 F.2d 967, 970 (8th Cir.1992) (stating in the context of a postindictment delay claim that although a defendant was unaware of continuances sought on his behalf, the delay was attributable to him). Clearly, continuances should rarely be sought with respect to motions filed based on speedy trial grounds, and based on the record this Court is not convinced that counsel exhausted all available opportunities to have this matter heard as originally scheduled.

The Court concludes that, while this factor is somewhat neutral, it weighs more heavily in the government's favor.

**Prejudice**

The amount of prejudice required is related to the reasonableness with which the government pursues a defendant. *Doggett,* 505 U.S. at 654-58; *Brown,* 325 F.3d at 1034-35; *Walkler,* 92 F.3d at 719. The *Doggett* Court specifically addressed the issue as to whether Doggett failed to make out a successful speedy trial claim because he did not show actual, or precise, prejudice. *Doggett,* 505 U.S. at 654. The Court explained its position through examples. First, if the government pursues a defendant with reasonable diligence, the speedy trial claim would generally fail despite the length of the delay, unless the defendant is able to show specific prejudice. *Id.* At the other end of the spectrum, if the government delays to gain a tactical advantage, this "official bad faith" would weigh heavily against the government and present an "overwhelming case for dismissal." *Id.* However, regarding cases of "official negligence" that occupy the middle-ground, the Court stated:

7

Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground. While not compelling relief in every case where bad-faith delay would make relief virtually automatic, neither is negligence automatically tolerable simply because the accused cannot demonstrate exactly how it has prejudiced him. . . .

Barker made it clear that "different weights [are to be] assigned to different reasons" for delay. Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice grows. Thus, our toleration of such negligence varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustifiable delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority. The Government, indeed, can hardly complain too loudly, for persistent neglect in concluding a criminal prosecution indicates an uncommonly feeble interest in bringing an accused to justice; the more weight the Government attaches to securing a conviction, the harder it will try to get it.

To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer than negligence demonstrably causing such prejudice. But even so, the Government's egregious persistence in failing to prosecute Doggett is clearly sufficient. The lag between Doggett's indictment and arrest was 8 ½ years, and he would have faced trial 6 years earlier than he did but for the Government's inexcusable oversights. The portion of the delay attributable to the Government's negligence far exceeds the threshold needed to state a speedy trial claim; indeed, we have called shorter delays "extraordinary." When the Government's negligence thus causes delay six times as long as that generally sufficient to trigger judicial review, and when the presumption of prejudice, albeit unspecified, is neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted, the defendant is entitled to relief.

*Id.* at 656-658.

Turning to Camacho's case, the government's objection is granted to the extent that

*Doggett* compels an examination of the prejudice issue because Camacho's case,

8

involving "official negligence," falls in the middle.  As stated earlier, the delay was deemed primarily due to the government's negligence.  However, the fact that Camacho knew that he faced potential charges tipped the scale somewhat in the government's favor.  In the words of the Eighth Circuit, mere negligence does not weigh "heavily" against the government.  *Page,* 544 F.2d at 986.  According to *Doggett,* this  somewhat neutral factor leads the Court to some examination, even on a limited basis, of the presence of specific prejudice to the defense.  Camacho has only generally alleged that the delay caused him to lose track of material witnesses[1] (Filing No. 22, Defendant's Brief, at 4) and an agent's failing memory[2] (Tr. 70).   The government's response is that the only witnesses to the offense are the government and his wife (as of the date of the hearing the couple remained married), the guns had been surrendered to the ATF and were still in ATF custody, and all relevant documents were within the government's possession.  (Tr. 72-73.)  The Court finds that the agent's difficulty recalling some details at the hearing on the motion is not necessarily a forecast of his potential trial testimony.  Given the sliding scale advised in *Doggett,* the Court has considered all of these factors together with the facts involved in its analysis of the first three factors of the *Barker* test, as well as the persuasive rebuttal of the presumptive prejudice caused by the almost 24-month time period at issue, and the

---

[1]Camacho cannot succeed with a general claim of this nature.  Rather, he must show that specific witnesses could supply material evidence in support of his defense. *United States v. Richards,*  707 F.2d 995, 998 (8th Cir. 1983).

[2]Camacho has not shown the failure of the agent's memory with respect to details required for trial purposes.  *United States v. Rudolph,* 970 F.2d 467, 469 (8th Cir. 1992).

9

lack of any argument that Camacho's speedy trial time has lapsed,[3] the Court concludes that the fourth element of the *Barker* test weighs in favor of the government inasmuch as Camacho has not shown sufficient prejudice under the standards discussed in *Doggett*.

## CONCLUSION

For the reasons discussed, the Court grants the government's objections to the Report and Recommendation, overrules the Report and Recommendation, and denies the Defendant's motion to dismiss.

IT IS ORDERED:

1.     The Magistrate Judge's Report and Recommendation (Filing No. 36) is overruled as discussed above;

2.     The government's statement of objections to the Report and Recommendation (Filing No. 37) is granted;

3.     The Defendant's motion to dismiss (Filing No. 21) is denied.

DATED this 21st day of July, 2005.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[3]In considering a claim of postindictment delay, the Eighth Circuit has stated that it is rare to find a Sixth Amendment violation when there has been no Speedy Trial Act violation. *United States v. Perez-Perez,* 337 F.3d 990, 995 (8th Cir.), *cert. denied,* 540 U.S. 927 (2003). The Court's review of the speedy trial clock in this case shows no violation.